IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:19CR517 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| -vs- | : | |
| | : | |
| ANTHONY GREER, | : | **ANTHONY GREER'S SENTENCING** |
| | : | **MEMORANDUM** |
| Defendant. | : | |

    Anthony Greer, through counsel, respectfully submits this sentencing memorandum for the Court's consideration at the sentencing hearing. For the reasons stated herein, Mr. Greer requests a sentence of time served. The reasons for this request are set forth in the attached sentencing memorandum.

                                             Respectfully submitted,

                                             STEPHEN C. NEWMAN
                                             Federal Public Defender
                                             Ohio Bar: 0051928

                                             */s/Charles E. Fleming*_____
                                             CHARLES E. FLEMING
                                             Assistant Federal Public Defender
                                             Ohio Bar: 0046778
                                             1660 West Second Street, Suite #750
                                             Cleveland, OH 44113
                                             (216) 522-4856 Fax: (216)522-4321
                                             E-mail: charles_fleming@fd.org

## MEMORANDUM

**I. STATEMENT OF FACTS**

Mr. Greer was charged in a one-count Indictment with a violation of 18 U.S.C. § 751(a) (Escape). (R. 1, Indictment). On October 28, 2019, Mr. Greer pled guilty to the Indictment without a plea agreement, and the Court referred the matter for preparation of a presentence report ("PSR"). (R--, Minutes of Proceedings, 10/28/2019).

The PSR was completed on January 16, 2020. (R. 17, PSR). It indicates that Mr. Greer's total offense level is 7 and his criminal history category is IV (8 - 14 months). (PSR at ¶52).

The totality of circumstances warrants a sentence of time served. This is sufficient, but not greater than necessary, to serve the purposes set forth in 18 U.S.C. §3553(a).

**II. LAW AND ARGUMENT**

This Court is aware of the broad ramifications of *United States v. Booker*, 125 S. Ct. 738 (2005), on sentencing proceedings. It made the sentencing guidelines advisory (as opposed to binding), and they are now merely one of the factors to be considered in determining the sentence. *Booker*, 125 S. Ct. at 764-65. The other factors to be considered include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed–
   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and
   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;

>   4. the kinds of sentence and the sentencing range established for . . .the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>   5. any pertinent policy statement . . .issued by the Sentencing Commission . . .;
>   6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>   7. the need to provide restitution to any victims of the offense….

18 U.S.C. § 3553(a).

In considering the section 3553(a) factors, the Sentencing Guidelines are to be given no more or less weight than any other factor. See *United States v. McBride*, 434 F.3d 470, 475 (6th Cir. 2006)(stating that "while the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant") (citation omitted). The breadth of the section 3553(a) factors promotes holistic sentences which may result in sentences lower than those previously calculated under a mandatory guideline scheme because the possible sentencing range no longer prohibits courts from considering any specific factor. Section 3582(a) of Title 18, entitled "Factors to be considered in imposing a term of imprisonment," further solidifies a holistic approach to sentencing, stating: "The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation…"

*Booker* established for all district courts an independent limit on the sentence that may be imposed. The primary sentencing mandate of section 3553(a) states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment—justice, deterrence, incapacitation, and rehabilitation: The court shall impose a sentence sufficient, but

3

not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). This so-called "parsimony provision" is not simply a factor to be considered in determining the sentence; it represents a cap above which the Court is statutorily prohibited from sentencing – even when a greater sentence is recommended by the Sentencing Guidelines. *United States v. Foreman*, 436 F.3d at 644 n. 1 (6th Cir.2006) (stating "a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)") (quoting 18 U.S.C. § 3553(a)); Richard S. Frase, Punishment Purposes, 58 STAN.L.REV. 67, 83 (2005) (stating "the structure of section 3553(a)," which lists the parsimony principle first, suggests that this principle "set[s] overall limits on the crime-control and other purposes which follow").

While a sentence within the guideline range will be considered presumptively reasonable on appeal, if the trial court has appropriately considered all of the sentencing factors in 18 U.S.C.§3553(a), a sentence outside of the guideline range after the same considerations is not presumptively unreasonable. See *U.S. v. Keller*, 498 F3d. 316, 323 (6th Cir. 2007), citing *Rita v. U.S.*,127 S.Ct.2456 (2007). The presumption of reasonableness given to a within-guideline sentence on appeal also does not create a "rebuttable presumption" that a sentencing court should impose a sentence within the applicable guideline range. *Rita*, 127 S.Ct. at 2463; See also *Gall v. U.S.*, 128 S.Ct. 586, 595 (2007). In fact, the Supreme Court in *Rita* made very clear that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita*, 127 S.Ct. at 2465. The presumption of reasonableness in the sentencing guidelines context is not the same as "a trial-related evidentiary presumption" that would shift the burden of proof to the defendant to justify a sentence outside of the guideline range. *Id.* at

4

2463. It has no independent legal effect; the appellate presumption of reasonableness is no more than an acknowledgment by the reviewing court that because the sentencing court and the U.S. Sentencing Commission have agreed that a sentence within the applicable range is appropriate, "it is probable that the sentence is reasonable." *Id*. at 2465.

    A.        **Nature and Circumstances of the Offense**

In accepting responsibility for his conduct, Mr. Greer gave a brief recitation regarding his conduct and why he did it:

> I am sorry for my actions, I should have never left the halfway house. I felt threaten and left the half way house, I should not have never left, I am sorry, I freaked out and got scared.

(PSR at ¶11).

Within a day or so of having left Oriana House, Mr. Greer tried to return. When he contacted Oriana House, he was told that he was terminated from the program and could not come back. His girlfriend, Veronica Brown, confirms that within a day or so of his escape she started making calls to the U.S. Marshal's office, the Bureau of Prisons, and even the correctional institution where Mr. Greer had been housed, in an effort to arrange his surrender. It was all to no avail. Mr. Greer even called Community Assessment and Treatment Services ("CATS") and spoke to a counselor to see if she could help him return to Oriana House.[1] She later informed Mr. Greer that she had spoken to a representative of Oriana House; like Mr. Greer, she was told that he had been terminated and could not return.

---

[1] He had been receiving treatment services at CATS. Defense counsel's paralegal contacted the counselor with whom Mr. Greer said he had spoken. She stated that because of her contractual obligations, she could not confirm or deny his representations. Defense counsel is still looking into the matter.

5

After his other efforts had failed, Mr. Greer began calling the U.S. Pretrial and Probation Office to see if they could assist with his return to Oriana House or surrender to authorities. After calling and leaving messages for a number of days, he ultimately spoke with Officer Rhyan Ackerman. According to Ms. Ackerman, Mr. Greer contacted her on about August 19, 2019, to arrange his surrender. She told him to report to her office on August 20, 2019. Mr. Greer reported as instructed and was arrested at that time. Ms. Ackerman also confirmed that Oriana House has a policy of terminating individuals who are absent without leave from the facility for a certain number of hours. She stated that after that time, the individual would not be allowed to return.

### B. Mr. Greer's History and Characteristics

Mr. Greer is 34 years old. (PSR at p. 2). When he was seven years old, his father was murdered. (PSR at ¶37). He suffered the trauma of seeing his father's dead body at his aunt's house, and says he will never forget seeing all the blood. (PSR at ¶37). His parents had divorced when he was approximately five years old. (PSR at ¶39). His mother later remarried, but Mr. Greer did not have a good relationship with his stepfather. (PSR at ¶39).

Mr. Greer has his high school diploma and later received a scholarship to the Art Institute of Pittsburgh. He states that he was unable to begin classes there because he was arrested. (PSR at ¶47).

He reports having been prescribed medication for anxiety and depression; he does not take the medication because he does not feel that it helps him. (PSR at ¶44). He also has other health concerns including high blood pressure, eczema, asthma, and problems with his vision, among other things. He takes several medications. (PSR at ¶¶41-42).

Mr. Greer has three children. He has not met two of them, due to incarceration and other issues. (PSR at ¶40).

Mr. Greer is in criminal history category IV under the U.S. sentencing guidelines. (PSR at ¶¶31 and 53). This is primarily based on two prior convictions for drug trafficking and aggravated assault. (PSR at ¶¶25 and 27).

### C. A Sentence Below the Advisory Guideline Range is Warranted Based on the Unique Circumstances of this Case

The sentencing guidelines do not account for the unique circumstances in this case. They allow a seven-level reduction for a person who escapes non-secure custody (like a halfway house) and voluntarily returns within 96 hours. *See* USSG §2P1.1(b)(2). Although Mr. Greer made various efforts to return to Oriana House within the 96-hour limitation, he was told by its personnel that he could not return because he had been terminated from the program. As a result of his inability to return there, he is not entitled to the reduction in §2P1.1(b)(2). The guideline also does not take into account Mr. Greer's various efforts to turn himself in, which ultimately led to his pre-arranged surrender on August 20, 2019. Had the reduction in 2P1.1(b)(2) applied to him, his total offense level would be 4. His sentencing range would have been 2-8 months. As the PSR suggests, these circumstances warrant a downward variance. A sentence of time served is sufficient to serve the purposes set forth in 18 U.S.C. §3553(a).

### D. Other Considerations

Mr. Greer would likely benefit from mental health counseling, parental skills counseling, and cognitive behavioral therapy ("CBT"). He suffered the trauma of his father's violent death at a very young age. He also gets very emotional when talking about situations he encountered

while in federal custody. Mental health counseling and CBT will assist him in addressing these concerns, and help him make better choices when confronted with difficult situations. Parenting classes will help him be a better father to his children.

### III. CONCLUSION

A sentence of time served is appropriate given Mr. Greer's history, characteristics, and the circumstances of this case. To the extent that he is kept in custody and/or placed on supervision, he is in need of mental health counseling and CBT to address past trauma he has suffered and help him make better choices in the future. He also needs parental counseling to give him the skills to be a better father when he is released.

> Respectfully submitted,
>
> STEPHEN C. NEWMAN
> Federal Public Defender
> Ohio Bar: 0051928
>
> */s/Charles E. Fleming*_____
> CHARLES E. FLEMING
> Assistant Federal Public Defender
> Ohio Bar: 0046778
> 1660 West Second Street, Suite #750
> Cleveland, OH 44113
> (216) 522-4856 Fax: (216)522-4321
> E-mail: charles_fleming@fd.org